PAT CLOWERS v. THE STATE.

No. 6117.   Decided February 23, 1921.

1.—Theft of Automobile—Continuance—Immateriality of Testimony—Motion For New Trial.

Independent of the question of diligence, it appears from the record that even if the absent witness had been present in court and had testified to all the facts which defendant claimed he would have sworn to, it is not believed that a verdict more favorable to the defendant would have resulted.

2.—Same—Continuance—Rule Stated—Motion For New Trial.

If, upon the hearing of defendant's motion for new trial, it appears from the evidence on trial that the absent testimony is material and probably true, the court may grant a new trial; but it is not in every case where the absent testimony is material and probably true that this court would revise the ruling of the trial judge, but it must appear that it is reasonably probable that if the absent testimony had been before the jury a more favorable verdict would have resulted. Following Covey v. State, 23 Texas Crim. App., 391, and other cases.

3.—Same—Evidence—Suspended Sentence—Other Offenses.

Upon trial of theft of an automobile, there was no error in permitting the sheriff to testify that defendant was charged with other offenses; he having pleaded for a suspended sentence, and it appearing that defendant had paid the fine for these offenses.

4—Same—Requested Charge—Original Taking—Fraudulent Intent.

Where, upon trial of theft of an automobile, the defendant requested certain charges which went to the proposition that defendant's fraudulent intent, if any, was subsequently formed after the original taking of the car, and he was therefore not guilty of theft, which the court refused, there was no reversible error, because the court submitted this phase of the case in his main charge to the jury.

Appeal from the District Court of Camp. Tried below before the Honorable J. A. Ward.

Appeal from a conviction of theft of an automobile; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*I. N. Williams,* for appellant.

*J. H. French, Jr.,* for the State.

HAWKINS, JUDGE.—This is a conviction for the theft of an automobile alleged to have been committed in Camp county, Texas, on the 25th of October, 1919; punishment two years in the penitentiary.

The case is here for our review on appellant's complaint, (1) that the trial judge erred in overruling his first application for a continuance on account of the absence of one M. E. Jaggears; (2) and in admitting certain testimony over his objection; (3) and refusing certain special charges which were requested by him.

In order that the court may intelligently review the action of the trial judge in overruling appellant's application for a continuance, and his subsequent action in overruling a motion for new trial with that application in view, it is necessary to make a more extended statement of the facts in the case than would otherwise be necessary.

The automobile which the appellant is alleged to have stolen belonged to one Jim Warrick, who went in his car about the 25th of October, 1919, from his home at Mt. Pleasant to the city of Pittsburg where he parked his car, in the main business part of the town, in front of or near Clark Brothers Grocery Store and in front of a barber shop situated near thereto. He left his car so parked upon the public streets of Pittsburg about 8:30 o'clock that night and went from there to the fair grounds, it appearing that a fair was then being held near the city of Pittsburg. At the time he left the car, and as we gather from the evidence, to prevent it from being started easily, he put a piece of paper under the coils. About 11:00 or 11:30 that night upon returning for his car he discovered the same was missing and immediately made a report of that fact to the officers, and through information by telephone the car was found in Sulphur Springs about fifty or fifty-five miles from Pittsburg on Sunday morning, it being Saturday night when the car was taken. It is admitted that appellant drove the car into the city of Sulphur Springs, and while in a restau-

rant at that place getting breakfast the sheriff of Hopkins County approached him and made some inquiry about the car, and appellant told him that the car belonged to one Thompson, but admitted that he had driven it into the city. At the time the car was left by its owner in the town of Pittsburg it was equipped with license numbers both in front and rear, and the engine number was in an unmutilated condition at that time. At the time the car was found by the officers in Sulphur Springs the original license numbers were gone and the engine number had been so mutilated by hammering or chiseling or in some other manner that it was unreadable, but the owner identified the car beyond question by other marks which are described by him and not necessary to be noted here. Appellant testifies that he went from the little town of Winnfield with his brother to the city of Pittsburg, reaching there about 7 o'clock on Saturday evening. He further says that while at the fair grounds in Pittsburg he met a man by the name of Thompson, whom he claims to have seen at one time in the union station at Dallas as he, appellant, was on his way home after his discharge from the army. After some conversation between him and Thompson, appellant says that Thompson told him that he was going to Dallas that night and asked him, appellant, to go with him, stating that he was traveling in a car, and wanted to leave Pittsburg about 12 o'clock that night, and made an appointment to meet appellant at a hamburger joint near the railroad station in Pittsburg; that as appellant had come from Winnfield with his brother, he told Thompson that he would try to find his brother and tell him that he was going to Dallas and would meet him, Thompson, at the hamburger joint. Appellant claims that when he went to the hamburger joint that this man Thompson was not there; that after waiting for him quite a while he went on up the street towards a restaurant looking for Thompson and met him, and that Thompson said he was about ready to go, and came out of the restaurant with his grip and put it in the car, which appellant admits having driven away. He says that Thompson had asked him previous to this time if he could drive a Ford car and that appellant informed him that he could. That at the time Thompson put his grip in the car he asked directions to a toilet and was told by appellant he would find one at the courthouse, and that Thompson then told appellant to drive the car over by the courthouse and he, Thompson, would meet appellant there, which appellant claims he did, and that they then proceeded on their way, and that appellant went by the little town of Winnfield to his home to get a change of clothing. Appellant's mother was placed upon the stand by appellant and testified that he did come home some time that night, and that he told her he was going to Dallas with a fellow, and she at first stated on direct examination that some one came home with him, but later on cross-examination she says that she saw no one, but that there was a car standing near the house at the time appellant came in, and that she supposed some one was with him. At this point the appellant's testimony is that Thompson went in the

house with him and went to his room, and remained in the house with him while he was changing his clothing; that they only remained there about twenty minutes when they proceeded on their journey towards Dallas, and that Thompson suggested they had better see whether they had gasoline and oil, and that appellant said he knew where they could get some, and that they would go wake Mr. Jaggears up and get some oil and gasoline, which they did, and that Thompson paid for the oil and gasoline while he, appellant, took a bucket and went some little distance away to get water to put in the radiator of the car. According to appellant's story, he had driven the car from the time it was taken off the streets at Pittsburg up to this point, but that after they left the garage at Winnfield Thompson took the wheel. Appellant further states in this connection that after the oil and gasoline were obtained, that he, appellant, took Mr. Jaggears home.

When the case was called for trial appellant filed his first application for a continuance on account of the absence of the witness M. E. Jaggears, who seems to have resided in the town of Winnfield but was temporarily in Oklahoma picking cotton, but that his family still lived in the town of Winnfield. The materiality of the testimony of the witness Jaggears as set out in the application is, that he expected to prove by said witness Jaggears that on the night of the alleged theft appellant, with one Thompson, came to his house to get said witness to go to his garage for the purpose of letting Thompson have some gasoline, and that said Jaggears did go, sold said Thompson five gallons of gasoline and some oil, and that said Thompson paid the witness Jaggears for said merchandise, and that while he, Jaggears, was getting the gasoline and oil the appellant went over to another garage near by and got some water to fill up the radiator of the automobile which Thompson and appellant were using.

Some question seems to have been raised in the trial court as to the sufficiency of the diligence in having process issued for the witness Jaggears, but in view of the holdings of this court heretofore in passing upon this question, where the application for a continuance was followed up by a motion for new trial, in view of the evidence as introduced, we are inclined to treat the application from another standpoint and dispose of the case as if there had been no question as to proper diligence. Assuming that everything stated in appellant's application is true, and that the witness Jaggears would have sworn to all the facts which appellant claims that he would have sworn to, what then would be the status of the case in the light of all the testimony adduced upon the trial? Jaggears, if present, could have only sworn that appellant and one Thompson came to his house on the Saturday night in question in an automobile and waked him up, and that he went with them to his garage and supplied the car they were using with gasoline and oil; that Thompson paid for this merchandise, and that while the gasoline and oil were being placed in the car appellant went across the street and secured some water to fill the radiator, and that

after that time he was returned to his home. Appellant claims that Thompson did not go with him and Jaggears when he, appellant, took the witness home, but that he remained at the garage, and that he, appellant, came back by for him. Whether the witness Jaggears should testify that it happened this way, or that they were both in the car at the time they returned him to his residence from the garage, would be immaterial. Appellant further testified that after this occurrence about the gasoline and oil, they proceeded on their way towards Dallas until they arrived within about three miles of Sulphur Springs where they were stuck in a mud hole, and after working for sometime to extricate the car, he, appellant, went up the road towards Sulphur Springs about a mile to a negro's house and got him after considerable delay to come down with his team and pull the car out of the mud hole; that when he got back Thompson had disappeared, and that his grip likewise was gone. He claims to have noticed the tracks of an automobile passing around the one which was stuck in the mud hole, and that he supposed Thompson had gone on to Sulphur Springs to try to secure help, and claims it was possible for the car to have gotten by him without his hearing or seeing it on account of the negro's house being some distance from the road. The original license numbers which were on the car at the time it was taken were found the next day in the little town of Winnfield in some weeds near a garage. It seems from the record that appellant was arrested in the town of Sulphur Springs and held by the officers there for operating a car without license numbers, and that fines were afterwards paid by him for this, but this question will be noticed later on with reference to another alleged error against the trial court.

Appellant, on his cross-examination with reference to the condition of the car in Sulphur Springs, appears to have contradicted himself. He says that when he got into Sulphur Springs there were no numbers on the car, and that he had not noticed it until he arrived at Sulphur Springs, and that after arriving there he got some numbers and put them on. He says he did not buy the numbers but just got them and put them on, and got them from a fellow at Sulphur Springs he did not know, but denies having gotten them off of another car in Sulphur Springs. Immediately after that he denies having gotten any numbers at Sulphur Springs and putting them on the car. In that status of the record what becomes the duty of this court in determining whether or not the trial court committed error in overruling appellant's application for a continuance, and in declining to grant a new trial with reference to the same matter? In discussing the rule by which this court is to be governed in reviewing the action of the trial court in overruling applications for continuance and refusing a new trial where such action is urged as error, Judge Willson, in Covey v. State, 23 Texas Crim. App., 391, says: "If upon the hearing of defendant's motion for a new trial it appears from the evidence adduced on the trial that the absent testimony is of a material character and

probably true, the court may and should grant a new trial." This is a substantial statement of the statutory requirement. In the next paragraph the following construction is given to that statute by Judge Willson: "It is not in every case, however, where the absent testimony is material and probably true, that this court would revise the ruling of the trial judge. It is only in a case where, from the evidence adduced on the trial, we would be impressed with the conviction, not merely that the defendant might possibly have been prejudiced in his rights by such ruling, but that it was reasonably probable that if the absent testimony had been before a jury a verdict more favorable to the defendant would have resulted." The Covey case was reversed because the court believed it came within the rule. In Browning v. State, 26 Texas Crim. App., 443, the foregoing rule is quoted with approval by Judge White, who then says: "An examination of the evidence adduced on the trial, and especially the uncontroverted inculpatory facts proven, will, in our opinion, show that the facts expected to be established by (the absent witness) are wholly immaterial in this case, and, whether true or false, do not tend to disprove defendant's guilt, as shown by the evidence; and if they had been before the jury would not likely or probably have affected the result of the verdict." To the same effect is the general proposition laid down by Mr. Branch in his Criminal Laws of Texas, Sec. 259, and many cases cited in support thereof. That section in Branch is a general statement as to when a reversal should follow overruling application for a continuance, but the converse of the rule would be equally true as stated in the Browning case. It is undeniably true that at some time after the owner left his car upon the public streets of Pittsburg, and before the appellant was apprehended and the car discovered in Sulphur Springs early the next morning, two things had occurred to the car which showed guilty knowledge of its possession; one was the removal of the two license numbers from the front and rear of the car, and the other was the unquestioned mutilation of the engine number. When did this occur, and at whose agency? It might be possible that while the car was sitting on the public streets in Pittsburg that Thompson could have removed the license numbers, but it is unbelievable that while the car was sitting in a public place he would have been so bold as to have obliterated the engine number which could have been accomplished only by considerable effort and noise. Unfortunately, from the time appellant puts himself in connection with this automobile no opportunity was ever presented for Thompson or anyone else to have mutilated the numbers on the engine, and take the license numbers off the car without the knowledge of appellant, if appellant did not himself participate in such acts. The fact that these license numbers were found in the weeds near a garage in the little town of Winnfield would be very persuasive that they were removed near that point. Appellant claims that he drove the car from the time it was taken from the place where left by the owner to Winnfield; that at that place

Thompson left the car and went in the house with appellant; that they were together in the car when they went after the witness Jaggears; that Jaggears was at the garage at the time the oil and gasoline were being placed in the car, and that appellant was only a short distance away across the street getting water for the radiator; that they remained together in the car from that point to the time they got stuck in the mud about three miles from Sulphur Springs, and that then was the only time that Thompson was left alone with the car. It is true that if, as stated by appellant, he left Thompson with the car at that point and went off to get the negro to pull them out of the mud hole, Thompson might at that time have mutilated the engine number, but it is equally true that the license numbers were not removed from the car at that time, because they were found at Winnfield many miles back on the road from where this unfortunate mud hole detained them. If the witness Jaggears had been present in court and had testified to all the facts which appellant claims he would have sworn to, we do not believe that a verdict more favorable to the appellant would have resulted. It seems to us from a review of the entire evidence in the record, that the most that could be said would have been that perhaps the appellant did not act alone in the theft of the automobile, but that he was acting together with one Thompson, if any such man ever existed.

Appellant further complains that the trial court erred in permitting the witness D. H. Carpenter, the sheriff of Camp County, to testify that appellant was charged with some offense at Sulphur Springs. Appellant filed an application for a suspended sentence. The witness Carpenter testified, substantially, that he was notified by the officers at Sulphur Springs that they were holding appellant for some offense with reference to using the automobile in question without license numbers, and that these fines were collected by him and sent to the sheriff at Sulphur Springs. It is true that the complaints, or informations, or indictments, or the instruments of whatever character by which these offenses were charged, were not introduced in evidence, yet it appears that appellant himself knew of these charges and authorized the payment of the fines by the sheriff, and told the sheriff how much he owed. This testimony was introduced solely upon the issue as to whether appellant was entitled to a suspended sentence, and the court so limited it in his charge, and we find no error in this ruling.

Appellant complains that the trial court erred in refusing to give his special charges Nos. 1, 2, and 3 to the jury, and asks this court to review that matter. It is not necessary to set out these special charges in full, but they all go to the proposition of appellant's intent at the time the car was taken, and as to his belief that the car belonged to one Bert Thompson, and that if a fraudulent intent, if any, was subsequently formed after the original taking of the car the appellant would not be guilty of theft. The special charges requested by appellant embraced correct propositions of law, and if the trial judge had

failed in his main charge to cover the subjects presented in these special charges, there would have been error, but when we refer to the main charge of the court we find this language, after submitting the State's theory of the case to the jury:

"If you believe from the evidence in this case that a person by the name of Bert Thompson, claimed to own the automobile alleged to have been stolen, and that he induced the defendant to crank the same and drive it to the courthouse in Pittsburg, and that afterwards the said Bert Thompson drove the said automobile away from Pittsburg, and if you further believe that the defendant believed the said automobile belonged to the said Bert Thompson, or that Bert Thompson had the right to use the same, then you will find the defendant not guilty. And if you have reasonable doubt as to whether one Bert Thompson claimed to own the said automobile, and as to whether or not the defendant believed that the said Bert Thompson had the right to the use of same, you will give the defendant the benefit of this doubt, and find the defendant not guilty.

"In order to constitute theft as charged in this case, it is necessary that the defendant at the time of his original taking of the automobile, if he did take it, intended to deprive the owner of the value of the same and appropriate it to the use or benefit of the defendant.

"If the defendant took the automobile, and at that time believed it was the property of Bert Thompson, but afterwards found it was not, and then formed the intent to convert it to his own use or benefit, that would not make him guilty under the indictment in this case."

The foregoing charge of the court made it unnecessary to give the special charges requested by appellant, and sufficiently presented this phase of appellant's defense, and we find no error on the part of the court in refusing the requested instructions.

The judgment is affirmed.

*Affirmed.*